# AFFIDAVIT OF CHRISTOPHER M. BZDUCH IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Christopher M. Bzduch, being sworn, state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the U.S. Bureau of Alcohol, Tobacco, Firearms, & Explosives ("ATF"), assigned to the Springfield, Massachusetts Field Office ("SFO"). I have been employed with the ATF for approximately two and one half years. I am currently assigned to the Springfield Area Firearms Enforcement Task Force and my primary mission is the investigation and prevention of federal offenses involving the unlawful use, manufacture, and possession of firearms and explosives; acts of arson and bombings; and illegal trafficking of alcohol and tobacco products. I attended and successfully completed the U.S. Department of Homeland Security Criminal Investigator Training Program and the ATF Special Agent Basic Training located in Glynco, Georgia.

2. Prior to joining the ATF, I was employed as a Peace/Police Officer/Investigator with the New York State Petroleum, Alcohol, and Tobacco Bureau and as a Police Investigator with the New York State Attorney General's Office: Criminal Investigations Division. I was employed with the State of New York for approximately six and one half years. I attended and successfully completed two law enforcement training academies in the State of New York. While employed with the State of New York, I investigated a wide variety of crimes. including but not limited to, financial fraud, money laundering, narcotics-related offenses, tobacco evasion, and other violations of New York State laws. I was also assigned to/involved in several different task forces including the Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force, Western New York Human Trafficking Task Force, and the Financial Crimes/Identity Theft

Task Force. I have further received additional in-service trainings including narcotics-related investigations.

3. Through my training and employment, I have experience and/or knowledge in conducting surveillance, using confidential informants, conducting undercover operations, executing arrest, search, and seizure warrants, conducting court-authorized electronic surveillance, and testifying in federal detention hearings and grand juries. I have interviewed numerous defendants, informants, and witnesses, and I have written and/or participated in numerous search warrants and arrest warrants.

4. I am currently investigating Derrick BROOKS a/k/a Derek BROOKS a/k/a "UZI" a/k/a "CURRY CHICKENN," Luis SEMPRIT a/k/a "LUE" a/k/a "LEMMY LUIS," and others for the following criminal offenses: (a) offenses involving the distribution and possession with the intent to distribute a controlled substance, namely heroin and cocaine base and use of a communication facility in the commission of a narcotics trafficking offense, and conspiracy to commit a narcotics offense, in violation of 21 U.S.C. §§ 841, 843(b), and 846, respectively; (b) offenses involving the transfer of firearms to known felons and/or drug addicts, possession of a firearm by a felon, and carrying a firearm in furtherance of a drug offense, in violation of 18 U.S.C. §§ 922(d), 922(g)(1), and 924(c), respectively; (c) offenses involving unlawfully engaging in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce, in violation of 18 U.S.C. § 922(a)(1)(A); (d) offenses involving a non-Federal Firearms Licensee transferring firearms to a non-Federal Firearms Licensee who lives in a different state than the transferee's state of residence, in violation of 18 U.S.C. § 922(a)(5); (g) the laundering of the proceeds derived from unlawful activity, including the proceeds of the above-listed narcotics and

firearm offenses, in violation of 18 U.S.C. §§ 1956 and 1957 (collectively, the "TARGET OFFENSES").

5. This affidavit is being submitted in support of an application for a warrant to seize a cellular telephone belonging to Derrick BROOKS (hereinafter referred to as the "SUBJECT TELEPHONE"), as described in Attachment A, and to conduct a search of said device as described in Attachment B, because there is probable cause to believe that the SUBJECT TELEPHONE contains evidence, fruits, and instrumentalities of the TARGET OFFENSES.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement, and confidential informant(s). This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

7. Since April 19, 2018, BROOKS has apparently aided and abetted the illegal sale of at least two firearms,[1] has distributed and/or possessed with the intent to distribute cocaine on at least five occasions, and has been arrested while in the unlawful possession of a firearm.

***The April 19, 2018 controlled purchase of FIREARM 1***

8. On April 19, 2018, a Massachusetts State Police ("MSP") Trooper acting in an undercover capacity conducted a controlled purchase of a firearm from an individual later identified as Luis SEMPRIT (hereinafter referred to as "SEMPRIT") in the City of Springfield, Massachusetts. Prior to the transaction, SEMPRIT instructed the undercover Trooper that

---

[1] In addition to the controlled purchase of firearms described in this affidavit, MSP Troopers purchased a firearm from SEMPRIT on April 30, 2018. BROOKS was not observed at this transaction.

SEMPRIT could be reached at telephone number (860) 352-1735 (hereinafter "the SEMPRIT TELEPHONE"). I examined the firearm purchased from SEMPRIT on a later date and determined it to be a "H & R INC. USA," model 925, .38 S&W caliber revolver, bearing serial number: AE26029 (hereinafter referred to as "FIREARM 1").

9. During the purchase of FIREARM 1 from SEMPRIT, the undercover Trooper observed a second male sitting in a vehicle at the time of the transaction. The male was later identified as BROOKS. According to information from the undercover Trooper, during the transaction the undercover Trooper negotiated the price of the firearm with SEMPRIT. The undercover Trooper stated that prior to finalizing the price of the firearm SEMPRIT walked over to the vehicle where BROOKS was sitting and spoke with BROOKS. SEMPRIT then walked back to the undercover Trooper and finalized the sale of the firearm.

10. Information received from the Springfield (Massachusetts) Police Department ("SPD"), indicates SEMPRIT and BROOKS are known to be affiliated with the EASTERN AVENUE POSSE/KNOX STREET POSSE street gangs in the Springfield, Massachusetts area. According to SPD, SEMPRIT and BROOKS associate themselves with known gang members.

11. On or about April 23, 2018, I requested a firearm trace be initiated by ATF on FIREARM 1.[2] The trace results revealed FIREARM 1 was originally purchased on or about June 21, 1968 in Newark, Ohio. I conducted a database query for FIREARM 1 and discovered that FIREARM 1 was not listed as stolen.

---

[2] ATF Trace number T20180133963.

***The July 12, 2018 controlled purchase of FIREARM 2***

12. On July 12, 2018, a MSP Trooper acting in an undercover capacity contacted SEMPRIT via the SEMPRIT TELEPHONE to arrange for the purchase of a firearm. On the same date, the undercover Trooper conducted a controlled purchase of a firearm from SEMPRIT in the City of Springfield, Massachusetts.

13. Law enforcement agents conducted surveillance of the undercover firearms transaction. Members of the surveillance team observed a Toyota sedan, silver in color, bearing Vermont registration 44351 (hereinafter referred to as "the silver Toyota") drive from the area where the undercover firearm purchase took place. A query of the silver Toyota revealed the vehicle was registered in the State of Vermont to a Meagan L. KUNKLE. I contacted Trooper Jonathan Prack of the Vermont State Police ("VSP") and inquired about KUNKLE. Trooper Prack informed me KUNKLE is the mother of Dylan AVERY. AVERY is known to the VSP and ATF Burlington (Vermont) Field Office to be involved in narcotics distribution and firearm activity in Vermont.

14. During the transaction, the undercover Trooper met with SEMPRIT. SEMPRIT informed the undercover Trooper that he had the firearm but was waiting for someone to bring the ammunition. Several minutes later, the undercover Trooper observed a vehicle matching the description of the silver Toyota pull in to the area where the firearm transaction took place. The undercover Trooper then observed an individual matching the physical characteristics of BROOKS exit the silver Toyota, walk to the area where SEMPRIT was standing, and meet with SEMPRIT. The undercover Trooper then observed SEMPRIT and that male exchange an item. The undercover Trooper was unable to observe what the two exchanged. SEMPRIT then walked toward the undercover Trooper and that time, the Trooper observed a bulge in

SEMPRIT's shirt that he had not observed prior to that moment. SEMPRIT then conducted the firearm transaction, providing the undercover Trooper with the firearm and ammunition.

15. On July 12, 2018, I examined the firearm purchased from SEMPRIT and determined it to be a "Taurus" model 608, .357 caliber revolver, bearing serial number PH428499 (hereinafter referred to as "FIREARM 2"), with six rounds of .357 caliber ammunition.

16. I conducted a database query for FIREARM 2 and discovered that it was reported stolen to the SPD in June of 2010. I contacted SPD and requested and reviewed a copy of the SPD incident report associated with FIREARM 2. According to information in the report, FIREARM 2 was stolen from a residence in Springfield, Massachusetts between June 12, 2010 and June 13, 2010. The victim of the theft was listed as a Troy Johnson. The report also indicated that two other firearms were stolen from Mr. Johnson's residence at the time of the incident. The report stated one of those firearms was recovered on or about April 1, 2011, in Chicopee, Massachusetts and the other firearm that has not been recovered. On July 12, 2018, I requested a firearm trace be initiated by ATF on FIREARM 2.[3] The trace results revealed FIREARM 2 purchased by a "Trey M Johnson" on or about December 18, 1996, from a Federal Firearms License ("FFL") in West Springfield, Massachusetts.

17. It was later determined SEMPRIT does not have any active/valid Massachusetts licenses to possess/sell such firearms nor does SEMPRIT have an active/valid FFL, which is required to conduct in the business of dealing in firearms within the United States of America.

---

[3] ATF Trace number T20180236624.

18. During the course of this investigation, I requested toll and subscriber records for the SEMPRIT TELEPHONE. However, I was unable to obtain any records for the SEMPRIT TELEPHONE because, in part, the company holding the records was based in a foreign country. Based on information received from other law enforcement officials, I have learned that the company has not complied with subpoena requests in the past.

19. I also requested and received tolls for the two telephone numbers believed to be utilized by BROOKS, (413) 693-6753[4] (hereinafter "BROOKS TELEPHONE 1") and (802) 585-6201[5] (hereinafter "BROOKS TELEPHONE 2). The toll records indicate that BROOKS TELEPHONE 1 was in contact with the SEMPRIT TELEPHONE, (860) 352-1735, on or about May 25, 2018. The toll records also indicated that BROOKS TELEPHONE 2 was in contact with the SEMPRIT TELEPHONE on July 12, 2018, approximately six times. The telephone calls took place between approximately 12:44 pm and 1:36 pm. This is the same date on which the MSP undercover Trooper purchased FIREARM 2 from SEMPRIT.

20. Based on BROOKS' presence at the controlled purchase of FIREARM 1 and FIREARM 2, these toll records and my training and experience, I believe that BROOKS was actively involved in and benefitted from the illegal sale of both firearms. I further believe that SEMPRIT primarily brokered the deals on behalf of BROOKS.

---

[4] BROOOKS provided this number to the Massachusetts State Police when he was detained on July 16, 2018, *see* paragraph 23.

[5] A confidential informant identified this number as belonging to BROOKS, *see* paragraph 26.

***BROOKS is charged with trafficking cocaine***

21. On July 15 2018 at approximately 2212 hours, MSP conducted a traffic stop in Northampton, Massachusetts of a vehicle registered in Vermont to a Shaun K. MURRAY of 2494 Snowbridge Road, Williamstown, Vermont. At time of the traffic stop, Calvin MEDINA of Springfield, Massachusetts was operating the vehicle. BROOKS and Edwin MORALES, both of Springfield, Massachusetts, were passengers in the vehicle. MSP ultimately seized approximately 78 grams of a substance believed to be cocaine from the vehicle. MEDINA was arrested and charged with driving- and vehicle-related violations along with narcotic violations. BROOKS and MORALES were charged with trafficking cocaine and conspiracy to violate the Controlled Substance Act and received court summonses to appear at their arraignment. During this stop, MORALES informed MSP Troopers that his telephone number was (413) 378-0495 and BROOKS provided MSP Troopers with the telephone number for BROOKS TELEPHONE 1. A review of toll records indicates that BROOKS TELEPHONE 1 had been in contact with MORALES in the past.

22. Based on information received from SPD, I believe MORALES is affiliated with the BLOODS/EASTERN AVENUE POSSE/KNOX STREET POSSE street gang(s). Based on my training and experience, I also know that the "413" exchange is an area code utilized for the Western Massachusetts area that includes Springfield, Massachusetts.

***North Adams, MA police identify BROOKS' Facebook account and provide information regarding BROOKS' illegal sale of narcotics***

23. On July 16, 2018, I spoke with North Adams (Massachusetts) Police Department ("NAPD") Officer Josh Zustra. Officer Zustra informed me that based on information received by NAPD, he believed BROOKS was distributing/selling narcotics in the North Adams,

Massachusetts area. Specifically, the Berkshire County (Massachusetts) Drug Task Force ("BCDTF") conducted controlled purchase(s) of narcotics from a location in North Adams, Massachusetts and the silver Toyota was believed to be the narcotics supplier's vehicle.

24. Additionally, a NAPD confidential reliable informant (hereinafter referred to as "CRI")[6] stated that BROOKS was distributing/selling heroin and cocaine base in North Adams, Massachusetts. CRI informed NAPD that BROOKS could be contacted via telephone to arrange for the purchase of heroin. NAPD informed me that CRI has purchased heroin on more than four occasions from BROOKS within the June 2018 and July 2018 time frame. The purchases took place in the North Adams, Massachusetts area. CRI provided the telephone number for BROOKS TELEPHONE 2 (802) 585-6201[7] and informed NAPD that BROOKS utilized a Facebook account under the name of "Curry Chickenn."

25. On July 16, 2018, I reviewed the Facebook account "Curry Chickenn." I observed several posts made on the "Curry Chickenn" account. On July 15, 2018 at approximately 11:08 pm, a post was made to the account, which read, "Cops got us pulled on the interstate smfh all i can do is pray but if not it's all over smfh [emoji]." On July 16, 2018 at approximately 1:36 am, a post was made to the account, which read, "I just wanna thank the

---

[6] CRI has been cooperating with the NAPD and in doing so has provided information pertaining to criminal activity in and around the North Adams, MA area. Furthermore, CRI has made numerous statements against penal interest when describing his/her personal criminal involvement with area drug dealers. CRI has admitted to NAPD to purchasing/possessing/using illegal narcotics on a regular basis for several years. Prior to the CRI providing the information listed above, the CRI provided information to law enforcement resulting in the arrest and conviction of at least one defendant in state court for a narcotics-related offense, the arrest of two individuals in state court for narcotics-related offenses, the arrest and indictment in state court of at least eight individuals for narcotics-related offenses, the conviction of at least six individuals for narcotics-related offenses, and seizures of quantities of heroin, cocaine base, evidence of drug distribution, and several thousand dollars of U.S. currency.

[7] Based on my training and experience I know the "802" exchange to be an area code used in the State of Vermont.

Lord nd my real niggas I keep around me free my driver we gone get u home ina a sec seem like I keep taking Ls but I always come back 10 times harder [emojis]." On July 16, 2018 at approximately 11:46 am, the following post was made to the account, "Took a crazy L last night but I bounced back [emojis]."

26. I believe, based on my training and experience and information received from the MSP, BROOKS was referencing the traffic stop conducted by the MSP on July 15, 2018 when BROOKS made the above listed posts on his Facebook account. In fact, based on the content of the message and the time it was posted, I believe that when BROOKS posted: "Cops got us pulled on the interstate smfh all i can do is pray but if not it's all over smfh [emoji]" while he was detained roadside by the MSP. I further believe, when BROOKS posted, "I keep taking Ls" and "Took a crazy L," BROOKS meant that he lost a quantity of his narcotics because it was seized by the MSP.

***BROOKS is arrested and charged with firearms-related offenses on September 24, 2018***

27. On September 24, 2018, BROOKS was arrested and charged by SPD with carrying a firearm without a license and improperly storing a firearm. At that time, BROOKS was also charged with being a fugitive of justice based on an active bench warrant issued by the Bronx County (New York) Supreme Court. Based on information received from the Bronx County (New York) District Attorney's Office, BROOKS previously plead guilty to a firearm offense in New York and is awaiting sentencing for said offense. The SPD report that documented this arrest listed BROOKS telephone number as (413) 727-1289.

28. When BROOKS was arrested, he was found to be in possession of the SUBJECT TELEPHONE. On October 9, 2018, I contacted the Hampden County (Massachusetts) Sheriff's Department ("HCSD") and inquired about BROOKS. I was informed BROOKS is currently

being held pending the disposition of his charges. I was further informed that the SUBJECT TELEPHONE is listed as his personal property and is being held at the HCSD Main Institution located at 627 Randall Road, Ludlow, Massachusetts. Based on informed received from HCSD, the SUBJECT TELEPHONE is a "Samsung Galaxy S9+."

29. I know based on my training and experience that drug and/or firearms dealers often utilize Facebook and/or cellular telephone phones as a form of communication with their customers, other co-conspirators, and/or suppliers. I further know that Facebook may be accessed on several different forms of electronic devices including cellular telephones and computers.

30. Furthermore, I know by my training and experience that individuals illegally distributing narcotics and firearms often change their cellular telephone equipment/telephone numbers in an effort to avoid detection by law enforcement.

31. I know based on my training and experience that electronic devices, cellular phones included, can retain and store text messages, photographs, location information, photographs, call logs, contact list(s), and cellular phone applications.

32. I know by my training and experience that the Greater Springfield/Holyoke, Massachusetts Metropolitan areas are sources of narcotics for other outlying areas of Massachusetts and Vermont. That is, drug dealers often procure heroin, cocaine, and other narcotics in Springfield and/or Holyoke and transport those narcotics to other outlying areas of Massachusetts (i.e. North Adams, Massachusetts) and Vermont.

33. I know from my training and experience and information provided to me by NAPD and other law enforcement officers in Berkshire County (Massachusetts) that drug dealers from the Springfield and/or Holyoke area "trip" up to the towns and/or cities located in Berkshire

County, more specifically North Adams, with heroin, cocaine base, and other narcotics and exchange the narcotics for cash and other valuables. These "trips" commonly last for between one and several days and occur periodically, with tripping drug dealers staying with drug customers in the towns/cities located in Berkshire County (i.e. North Adams) or at hotels while they are in Berkshire County conducting their drug business.

34. I further know from my training and experience and information provided by VSP and other law enforcement officers in Vermont that drug dealers in Springfield and/or Holyoke travel to Vermont with heroin and other narcotics and exchange that heroin and other narcotics for cash, firearms, and other valuables, including electronics. These "trips" commonly last for between one and several days and occur periodically, with tripping drug dealers staying with drug customers in Vermont or at hotels while they are in Vermont conducting their drug business.

35. I further know by my training and experience that the value of narcotics in areas of Berkshire County (i.e. North Adams) and Vermont is greater than the value of the same narcotics in Springfield and Holyoke. Therefore, it is more profitable for drug dealers to transport the narcotics to Berkshire County and/or Vermont and sell/distribute the narcotics in those areas.

36. I further know from my training, experience, and information provided by VSP and other law enforcement officers in Vermont that Vermont is a source of firearms for Springfield and Holyoke.

37. I further know from my training and experience that it is easier for an individual to obtain and convey firearms in Vermont than it is in Massachusetts. Consequently, drug

dealers often obtain firearms in exchange for narcotics in Vermont and then bring those firearms into Massachusetts for use in criminal activity/resale.

38. For the reasons set out in this affidavit and based on my training and experience, BROOKS' pattern of behavior is consistent with drug and firearms traffickers/distributors.

***Possession of the SUBJECT TELEPHONE***

39. The SUBJECT TELEPHONE is currently in the possession of the Hampden County Jail, and is being stored at its facilities, as described in Attachment A. Investigators obtained the equipment when it was seized incident to BROOKS' arrest on September 24, 2018.

40. Therefore, while the investigators might already have all necessary authority to examine the computer equipment, I seek this additional warrant out of an abundance of caution to be certain that its search will comply with the Fourth Amendment and other applicable laws.

***Probable Cause to Believe That the SUBJECT TELEPHONE Contains Evidence, Fruits, And Instrumentalities***

41. As discussed above, the equipment is currently being stored by investigators at their facilities as described in Attachment A. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

42. Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers. Samsung Galaxy

S9+ phones, such as BROOKS' phone, are a type of smartphone. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

43. From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones, computer hardware, computer software, and storage media.

44. Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

**CONCLUSION**

45. Based on the information described above, I have probable cause to believe that BROOKS has/have committed the TARGET OFFENSES.

46. Based on the information described above, I also have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are contained within the equipment described in Attachment A.

Respectfully submitted,

5260

Christopher M. Bzduch, Special Agent
U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on this 1st day of November, 2018.

KATHERINE A. ROBERTSON
United States Magistrate Judge